UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                          :
   LYNN TILTON, et ano.,                   :
                                          :        19cv9733
                     Plaintiffs,           :
                                          :        OPINION & ORDER
               -against-                   :
                                          :
   MBIA INC., et ano.,                     :
                                          :
                     Defendants.           :
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
```

WILLIAM H. PAULEY III, Senior United States District Judge:

Plaintiffs Lynn Tilton and Patriarch Partners XV, LLC (collectively, "Tilton")

brought this action against Defendants MBIA Inc. and MBIA Insurance Corporation

(collectively, "MBIA") in the Supreme Court of the State of New York, Westchester County,

alleging state law claims for fraudulent inducement, promissory fraud, and promissory estoppel.

MBIA removed this action and moves under 28 U.S.C. §§ 1404(a) and 1412 to transfer this case

to the United States District Court for the District of Delaware for referral to the Delaware

Bankruptcy Court, where a related Chapter 11 bankruptcy proceedings is pending.  Tilton moves

to remand this action back to state court.  For the reasons that follow, MBIA's motion is denied

and Tilton's motion is granted.

BACKGROUND

This action arises from a string of lawsuits concerning the Zohar investment

vehicles.  See, e.g., Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC, 286 F. Supp. 3d 634

(S.D.N.Y. 2017).  The Zohar Funds are comprised of three separate investment vehicles: Zohar

CDO 2003-1, Limited ("Zohar I"), Zohar II 2005-1, Ltd. ("Zohar II"), and Zohar III, Ltd.

("Zohar III," and together with Zohar I and Zohar II, the "Zohar Funds").  The Zohar Funds are

collateral loan obligation funds formed by Tilton between 2003 and 2007.  (Am. Compl., ECF

No. 1-7 ("Compl."), ¶ 1.)  The Zohar Funds issued notes to investors to raise capital to then

invest in the debt and equity of distressed portfolio companies.  (Compl. ¶ 40.)  The Zohar I

Class A notes matured on November 20, 2015 and the Zohar II Class A notes matured on

January 20, 2017.  (Compl. ¶¶ 6, 11, 52.)  In an effort to enhance the credit rating of the notes,

MBIA issued financial guaranty policies for the benefit of Zohar I Class A-1 and Class A-2

notes, but not the Zohar I Class A-3 notes and the Zohar II Class A-1, Class A-2 and Class A-3

notes.  (Compl. ¶¶ 45–47.)  MBIA did not issue any guarantees for notes offered by Zohar III.  If

MBIA was required to pay on the guarantees, it acquired certain rights, such as rising in priority

in the payment waterfall and gaining voting rights.  (Compl. ¶ 52.)

　　　　　　Tilton is the chief executive officer and owner of Patriarch Partners, LLC and

affiliated entities.  (Compl. ¶¶ 36–37.)  Affiliates of Patriarch Partners, LLC serve as collateral

managers of the Zohar Funds.  (Compl. ¶ 39.)  Tilton beneficially holds preference shares in the

Zohar Funds and the Zohar I Class A-3 notes.  (Compl. ¶ 55.)  Tilton is also the sole board

member or managing member for most of the portfolio companies.  (Compl. ¶ 36.)

　　　　　　As the 2008 financial crisis took its toll on the portfolio companies, Tilton and

MBIA began to believe that the Zohar Funds might default on their notes.  (Compl. ¶¶ 6, 65, 67–

70.)  Tilton alleges that MBIA had an exposure of approximately $150 million Zohar I and $800

million exposure for Zohar II.  (Compl. ¶ 72.)  In 2012, Tilton attempted to work with MBIA to

restructure the funds, primarily by extending the Zohar I maturity date from November 2015 to

January 2017.  (Compl. ¶¶ 67–86.)  However, in order to effectuate the restructuring, Tilton

needed the consent of all of the Zohar I noteholders.  (See Compl. ¶¶ 47, 68, 101.)  An

institutional investor held the MBIA-insured Zohar I A-1 notes, MBIA held the Zohar I A-2

notes, and a third party held the non-MBIA-insured Zohar I A-3 notes.  (Compl. ¶ 55.)  In October 2012, Tilton began discussions with an MBIA senior executive about restructuring.  (Compl. ¶¶ 67–86.)  Tilton alleges that this executive represented that the Zohar I A-3 noteholder was an "impediment" to the restructuring.  (Compl. ¶ 72.)  Further, she alleges MBIA told her that if she purchased the Zohar I A-3 notes, MBIA would extend the maturities for both Zohar I and Zohar II.  (Compl. ¶ 72.)  On March 26, 2015, Tilton purchased the Zohar I A-3 notes for approximately $100 million.  (Compl. ¶¶ 55, 95–96.)  MBIA then refused to extend the maturities for the Zohar Funds.  (Compl. ¶¶ 97–107.)

On the eve of Zohar I's maturity, Tilton filed the instant action in the Supreme Court of the State of New York.  (ECF No. 1-1.)  Tilton asserted causes of action for fraud, breach of contract, and promissory estoppel.  (Compl. ¶¶ 31, 126–155.)  On February 19, 2016, MBIA moved to dismiss the case.  (ECF No. 1-11.)  The state court dismissed the breach of contract claim but allowed the fraud and promissory estoppel claims to move forward.  (ECF No. 1-24.)  The parties then began discovery.  (ECF No. 1-27.)  On December 13, 2017, the parties both moved for summary judgment.  (ECF No. 1-43.)  The New York State Supreme Court did not rule on the motions.

Concurrent with filing the instant action that was stayed due to the Bankruptcy, Zohar I defaulted on its notes.  (Compl. ¶ 116.)  Pursuant to the guarantees it issued, MBIA paid approximately $149 million to Zohar I noteholders.  (See Compl. ¶ 115; Notice of Removal, ECF No. 1 ¶5.)  Because of the payment, MBIA gained rights to liquidate Zohar I's collateral and rose in Zohar I's waterfall, such that MBIA would be made whole before Tilton received distributions.

On November 22, 2015, Tilton commenced an involuntary Chapter 11 proceeding against Zohar I in the United States Bankruptcy Court for the Southern District of New York. See In re Zohar CDO 2003-1, Ltd., No. 15-23680-RDD (Bankr. S.D.N.Y. Nov. 22, 2015). On February 5, 2016, Tilton withdrew the petition. See In re Zohar CDO 2003-1, Ltd., No. 15-23680 (Bankr. S.D.N.Y. Feb. 6, 2016), ECF No. 44.

On March 3, 2016, the Patriarch Entities resigned as the collateral managers of the Zohar funds and were replaced by a third-party. (ECF No. 27-5 ¶ 178.) MBIA then began a liquidation auction of the Zohar I collateral. In an effort to halt the auction, Tilton filed another suit in New York State Supreme Court to enjoin the auction. That case was removed to this District. See Patriarch Partners XV, LLC v. U.S. Bank Nat'l Ass'n, No. 16-cv-7128 (S.D.N.Y. Sept. 13, 2016), ECF No. 1. On October 10, 2016, a judge in this District denied Tilton's motion for a preliminary injunction. See Patriarch Partners XV, LLC, No. 16-cv-7128 (S.D.N.Y. Oct. 18, 2016), ECF No. 76. The auction went forward and MBIA acquired all of Zohar I's collateral through a no-cash credit bid of approximately $150 million. (Compl. ¶ 150.)

On March 11, 2018, Tilton directed the Zohar Funds to file voluntary Chapter 11 petitions in the Delaware Bankruptcy Court. See In re Zohar III, Corp., No. 18-10512 (Bankr. D. Del. Mar 11, 2018) (the "Bankruptcy"). The Bankruptcy stayed the instant action, as well as the numerous other litigations. To quell the sparring in bankruptcy court, the parties entered into a settlement agreement, to monetize the Zohar Parties' interests in the portfolio companies. (Decl. of Jonathan M. Hoff in Opp'n to Tilton's Mot. to Remand, ECF No. 27 ("Hoff Decl."), Ex. 5 ("Settlement Agreement"), ¶¶ 8, 10–12.) The Settlement Agreement expired on September 30, 2019. (Notice of Removal, ECF No. 1 ¶ 10.) The next day, Tilton filed an equitable

subordination complaint in the Delaware Bankruptcy Court.  (Hoff Decl., Ex. 4 ("Subordination Compl.").)

After receiving a copy of the Subordination Complaint on October 1, 2019, MBIA removed the instant action that was stayed due to the Bankruptcy to this Court on October 21, 2020 with the intention of moving to transfer the case to Delaware.  (Notice of Removal, ECF No. 1.)

DISCUSSION

I.   Tilton's Motion to Remand

This Court begins with Tilton's remand motion because Tilton argues, in part, that this Court lacks subject matter jurisdiction over this case.  See Smartmatic USA Corp. v. Dominion Voting Sys. Corp., 2013 WL 5798986, at *3 (S.D.N.Y. Oct. 22, 2013) ("Because the removal statute only allows removal of actions within the Court's original jurisdiction, and because fundamental principles of American jurisprudence forbid the Court from acting in the absence of subject matter jurisdiction, . . . plaintiffs' [motion to remand] must be examined before any other matter." (alterations in original) (quotation marks omitted)).

A.   Legal Standard

Cases filed in state court may be removed to federal court when "the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  "Removal statutes are construed narrowly and all uncertainties are resolved in favor of remand in order to promote the goals of federalism, restrict federal court jurisdiction, and support the plaintiff's right to choose the forum."  Cohen v. KIND L.L.C., 207 F. Supp. 3d 269, 270 (S.D.N.Y. 2016) (quotation marks omitted); accord Blockbuster, Inc. v. Galeno, 472 F.3d 53, 56–58 (2d Cir. 2006).  The removing party has the burden of demonstrating that federal jurisdiction exists.  See

Grimo v. Blue Cross/Blue Shield, 34 F.3d 148, 151 (2d Cir. 1994).  "It is a fundamental

princip[le] of law that whether subject matter jurisdiction exists is a question answered by

looking to the complaint as it existed at the time the petition for removal was filed."  Zerafa v.

Montefiore Hosp. Hous. Co., 403 F. Supp. 2d 320, 325 (S.D.N.Y. 2005).

   B. Subject Matter Jurisdiction

    Tilton first asserts that there is no subject matter jurisdiction over this action.

MBIA counters that jurisdiction exists under 28 U.S.C. § 1334(b).  Section 1334 provides that

"the district courts shall have original but not exclusive jurisdiction of all civil proceedings

arising under title 11, or arising in or related to cases under title 11."  Actions arising under Title

11 are "any matter under which a claim is made under a provision of [T]itle 11."  Delaware Tr.

Co. v. Wilmington Tr., N.A., 534 B.R. 500, 511 (S.D.N.Y. 2015) (alteration in original)

(quotation marks omitted).  In contrast, "arising in" jurisdiction "covers claims that are not based

on any right expressly created by [T]itle 11, but nevertheless, would have no existence outside of

the bankruptcy."  Baker v. Simpson, 613 F.3d 346, 350 (2d Cir. 2010).  Finally, "related to"

jurisdiction provides bankruptcy jurisdiction to any action if the "outcome might have any

'conceivable effect' on the bankrupt estate."  Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.,

639 F.3d 572, 579 (2d Cir. 2011).

    Because MBIA need only demonstrate a single source of federal subject matter

jurisdiction and "related to" provides the lowest hurdle, this Court need only examine "related

to" jurisdiction at this stage.  "The test for determining whether litigation has a significant

connection with a pending bankruptcy proceeding is whether its outcome might have any

'conceivable effect' on the bankrupt estate."  In re Cuyahoga Equip. Corp., 980 F.2d 110, 114

(2d Cir. 1992).  "Congress did not delineate the scope of 'related to' jurisdiction, but its choice of

words suggests a grant of some breadth." Celotex Corp. v. Edwards, 514 U.S. 300, 307–08 (1995). The "conceivable effects tests" gives jurisdiction "so long as it is possible that the proceeding may affect the debtor's rights or the administration of the estate." Winstar Holdings, LLC v. Blackstone Grp. L.P., 2007 WL 4323003, at *1 n.1 (S.D.N.Y. Dec. 10, 2007). This Court has jurisdiction as long as "the outcome could alter the debtor's rights, liabilities, options, freedom of action" or impact "the handling of the administration of the bankruptcy estate." In re WorldCom, Inc. Secs. Litig., 293 B.R. 308, 317 (S.D.N.Y. 2003).

That is clearly the case here. If Tilton wins money damages against MBIA, she will not be able to equitably subordinate MBIA in the Bankruptcy action. Moreover, this Court cannot ignore the overlap between the Complaint and the Subordination Complaint. At bottom, both pleadings accuse MBIA of similar conduct. Indeed, many paragraphs from the Complaint in this action appear to be grafted verbatim to the Subordination Complaint. Accordingly, this Court has subject matter jurisdiction over this case.

C.   Whether Removal was Proper under 28 U.S.C. § 1446

Tilton argues that even if subject matter jurisdiction exists, MBIA's removal was improper under 28 U.S.C. § 1446. Section 1446 provides, in pertinent part, that:

> Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 USC § 1446(b)(3) (emphasis added.)

MBIA removed, arguing that its receipt of the Subordination Complaint was "other paper" from which federal jurisdiction could first be discerned. Tilton counters that "other paper" must originate from the instant case. As a general rule, Tilton is correct. See

Suttlehan v. MidFirst Bank, 205 F. Supp. 3d 366, 369 (S.D.N.Y. 2016) ("As a general proposition, many courts have determined that documents emanating from without the lawsuit do not count as an 'other paper' within the meaning of § 1446(b)(3)."); see also League of Women Voters v. Commonwealth of Pennsylvania, 921 F.3d 378, 384 (3d Cir. 2019) (holding that a writ not filed in the case did not start the 30-day clock under Section 1446(b)(3)); Dahl v. R.J. Reynolds Tobacco Co., 478 F.3d 965, 969 (8th Cir. 2007) (same); Wisconsin v. Amgen, Inc., 516 F.3d 530, 533 (7th Cir. 2008) (same).  These courts reason that the text of Section 1446(b)(3) requires "other paper" to originate from the case at hand because "the generalized term 'other paper' appears to be limited by the three specific terms that precede it, all of which implicitly refer only to documents generated in the same proceeding."  Suttlehan, 205 F. Supp. 3d at 371 (quotation marks omitted).

Notably, all of these cases analyze instances in which the plaintiff—the party seeking remand—is arguing that the Section 1446(b)(3) clock has run.  On its face, an interpretation that "other paper" must come from the removed case is fair to the removing party.  Otherwise, the court would need to engage in an inquiry as to whether the removing party actually received the document in question and whether that document alone demonstrated removability.  The Second Circuit has already rejected such a requirement using the same logic.  See Cutrone v. Mortg. Elec. Registration Sys., Inc., 749 F.3d 137, 145 (2d Cir. 2014) ("This approach also avoids courts expending copious time determining what a defendant should have known or have been able to ascertain at the time of the initial pleading [or other relevant filing]." (alteration in original) (quotation marks omitted)).  This concern is especially apparent in cases asserting bankruptcy jurisdiction.  Non-debtors may not be aware of a filing in a bankruptcy that provides bankruptcy jurisdiction.

Here, the removing party seeks to use "other paper" as a means to demonstrate that jurisdiction exists.  This begs the question: If plaintiffs cannot use Section 1446(b)(3) as a sword to argue that removal is improper because the "other paper" comes from outside the instant case, can defendants utilize information gleaned from documents outside of the litigation to remove the action?  Put another way, can "other paper" from different suits constitute a basis for removal and not start the 30-day clock?

In <u>Cutrone</u>, the Second Circuit addressed a similar issue in the Class Action Fairness Act ("CAFA") context.[1]  749 F.3d at 142.  In cases arising under CAFA, there is a jurisdictional requirement that the damages be at least $5,000,000.  <u>See</u> 28 U.S.C. § 1332(d)(2).  However—in many CAFA cases—the complaint does not indicate this amount and defendants will determine after their own investigation that the amount in question exceeds the statutory requirement.  In <u>Cutrone</u>, the Second Circuit addressed "whether an indeterminate complaint or subsequent document triggers the removal clocks of 28 U.S.C. § 1446(b) in CAFA cases." <u>Cutrone</u>, 749 F.3d at 142–43.  The Court of Appeals answered that question in the negative, holding that "in CAFA cases, the removal clocks of 28 U.S.C. § 1446(b) are not triggered until the plaintiff serves the defendant with an initial pleading or other document that explicitly specifies the amount of monetary damages sought or sets forth facts from which an amount in controversy in excess of $5,000,000 can be ascertained."  <u>Cutrone</u>, 749 F.3d at 145.

The Court of Appeals then turned to whether "a defendant may . . . remove an action outside of the 30-day removal limits delineated in 28 U.S.C. §§ 1446(b)(1) and (b)(3) or if they are the exclusive time periods during which a defendant may remove."  <u>Cutrone</u>, 749 F.3d at 146.  More specifically, "may [a defendant] remove based on its own investigation?"  <u>Cutrone</u>,

---

[1]    Neither party addressed <u>Cutrone</u> in their initial briefing or at oral argument.  Accordingly, this Court directed the parties to file supplemental briefing on the case.  (<u>See</u> ECF Nos. 33, 34.)

749 F.3d at 147.  Following the Ninth Circuit, the Second Circuit held "Section 1446 imposes a time limit only in cases in which the plaintiff's initial pleading or subsequent document has explicitly demonstrated removability.  Defendants are permitted to remove outside of these periods when the time limits of 28 U.S.C. § 1446(b) are not triggered."  Cutrone, 749 F.3d at 147; see also Roth v. CHA Hollywood Medical Center, L.P., 720 F.3d 1121, 1123 (9th Cir. 2013).  The Court of Appeals reached this conclusion because the "text of 28 U.S.C. § 1446(b) does not indicate that the two 30-day periods listed therein are the exclusive authorizations of removal."  Cutrone, 749 F.3d at 147.  As such, in CAFA cases, documents discovered outside of the case that demonstrate removability "fail to trigger the removal periods of 28 U.S.C. §§ 1446(b)(1) and (b)(3), [and] a defendant may remove a case when, upon its own independent investigation, it determines that the case is removable."  Cutrone, 749 F.3d at 148.

While Cutrone was decided in the CAFA context, its holding applies here.  The initial pleadings in this case allege state law claims against non-diverse parties.  (See generally Compl.)  Only upon receipt of the Subordination Complaint did MBIA discover this case's removability.  MBIA invoked a plethora of federal removal statutes, including 28 U.S.C. 1452— the bankruptcy removal statute.  (Notice of Removal, ECF No. 1, at 1.).  The Subordination Complaint provides for removal under Section 1452 without triggering the Section 1446(b)(3) 30-day clock because it is not "other paper."  Cutrone suggests removability is possible upon a defendant's own investigation, and this Court sees little reason why a filing in a related action could not similarly provide a basis for removability.  Indeed, one other court in this District has applied Cutrone outside of the CAFA context.  See Veleron Holding, B.V. v. Stanley, 2014 WL 6386733, at *3 (S.D.N.Y. Nov. 13, 2014) (applying Cutrone to a fraud case).

Fundamental principles of fairness also dictate that the holding in <u>Cutrone</u> should apply here.  This is a case where federal subject matter jurisdiction clearly exists, but the jurisdiction did not arise until long after the filing of the suit.  Allowing Section 1446(b)(3) to bar removal would result in a perverse circumstance in which federal subject matter jurisdiction is apparent but removal is impossible.  Additionally, any threat of gamesmanship is also likely limited.  <u>See</u> <u>Cutrone</u>, 749 F.3d at 147 ("We also believe that, in most cases, defendants will likely remove as soon as the existence of federal jurisdictional predicates becomes apparent.").

Even if MBIA is able to remove this case utilizing the Subordination Complaint, Tilton argues that Section 1446(b)(3) would render the removal untimely as the initial bankruptcy petition would have provided "related to" jurisdiction.  But this argument ignores the first holding of <u>Cutrone</u>.  "[T]he 30-day removal periods of 28 U.S.C. §§ 1446(b)(1) and (b)(3) are not triggered until the plaintiff serves the defendant with an initial pleading or other document" in the case that demonstrates removability.  <u>Cutrone</u>, 749 F.3d at 148.  Neither the initial bankruptcy petition nor the Subordination Complaint started the clock under Section 1446(b)(3) because they are not from the instant case.  Accordingly, this Court finds that Section 1443(b)(3) does not bar MBIA's removal, and the removal was proper.

D. <u>Equitable Remand and Permissive Abstention</u>

Tilton argues that even if jurisdiction exists and removal is not barred under Section 1443(b)(3), this Court should equitably remand the case or abstain.  Section 1452(b) provides that a court "may remand such claim or cause of action on any equitable ground" and Section 1334(c)(1) provides that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under

title 11." "The two inquiries are essentially the same and are often analyzed together." <u>Little Rest Twelve, Inc. v. Visan</u>, 458 B.R. 44, 60 (S.D.N.Y. 2011) (citing <u>CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC</u>, 396 B.R. 602, 607 (S.D.N.Y. 2008)).  The factors courts consider are:

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.

<u>Little Rest Twelve, Inc.</u>, 458 B.R. at 60.  Equitable remand and permissive abstention should be deployed sparingly.  <u>CCM Pathfinder</u>, 396 B.R. at 607.

On balance, this Court finds that the factors weigh in favor of equitable remand and permissive abstention.  This finding is guided predominantly by this Court's denial of MBIA's motion to transfer this action, as explained later in this opinion.

The first factor— the effect on the efficient administration of the bankruptcy estate—is neutral.  MBIA argues that this factor controls because it assumes this action will be transferred to the District of Delaware, where it will be consolidated with the Bankruptcy.  As such, MBIA asserts that massive efficiencies will be realized by litigating all of the parties' disputes in a single forum.  But defects in MBIA's motion to transfer venue doom that possibility.  Instead, this Court must weigh the efficiencies of either litigating this case in this District or in the New York Supreme Court—neither of which are connected to the Bankruptcy. From the perspective of the Bankruptcy estate, there is no difference between these options.

The second—predominance of issues of state law—factor heavily weighs in favor of remand, as Tilton brings only state law claims.

The third factor—complexity of the state law questions—is neutral.  Tilton asserts straightforward contract and tort claims, which both this Court and the New York Supreme Court are capable of adjudicating.

The fourth factor—comity—weighs in favor of remand.  "Comity 'tak[es] into account such factors as . . . the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims.'"  Chenensky v. N.Y. Life Ins. Co., 942 F. Supp. 2d 388, 392 (S.D.N.Y. 2013) (quoting City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)).  Tilton alleges no federal claims and the only jurisdictional predicate is relatedness to a bankruptcy with which this action cannot be consolidated. Moreover, this action has progressed through motion practice, discovery, and the state court marked the case as "trial ready."  (ECF No. 1-43.)

The fifth factor—relatedness to the bankruptcy—militates in favor of remand. While "related to" jurisdiction exists, this action cannot be consolidated with the Bankruptcy.  As such, this action is beyond the orbit of the Bankruptcy.

The sixth factor—right to a jury trial—is neutral.  Both this Court and the New York Supreme Court are equipped to conduct a jury trial.

Finally, the seventh factor—prejudice to involuntarily removed defendants—is neutral because there are no involuntarily removed defendants.  Weighing these factors, this Court concludes that the prudent course is to equitably remand the case and permissively abstain.

E.  Fees and Costs under 28 U.S.C. § 1447(c)

Despite the closeness of the remand call, Tilton seeks attorneys' fees and costs. Section 1447(c) allows a court to award "just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  "Absent unusual circumstances, courts may award

attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."  Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).  Here, MBIA had a reasoned basis to remove this action because federal subject matter jurisdiction exists and removal was proper.  This Court's remand rests solely on equitable grounds.  Accordingly, Tilton's request for attorneys' fees and costs is denied.

II.   MBIA's Motion to Transfer

MBIA moves under Section 1412 to transfer this case to the district of Delaware.[2]  Section 1412 states that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."

A.   Whether Section 1412 Applies

The text of Section 1412 requires that a district court find that the action arises "under title 11" before addressing the convenience of the parties or the interests of justice.  In addressing this point, MBIA argues that this Court may transfer the case pursuant to Section 1412 even if it is determined to be non-core.  In effect, MBIA maintains that "related to" jurisdiction is all that is required for transfer under Section 1412.  However, MBIA invokes the wrong standard.  Indeed, there does appear to be some confusion amongst courts.  Compare, e.g., Smartmatic USA Corp. v. Dominion Voting Sys. Corp., 2013 WL 5798986, at *6 (S.D.N.Y. Oct. 22, 2013) (transferring a case after only finding "related to" jurisdiction existed); with, ICICI Bank Ltd. v. Essar Glob. Fund Ltd., 565 B.R. 241, 248 (S.D.N.Y. 2017) (requiring an action to be core to be transferred).[3]

---

[2]     MBIA initially moved under both Section 1412 and Section 1404(a) but withdrew its motion under Section 1404(a).  (Jan. 23, 2020 Arg. Tr., at 30–31.)

[3]     Indeed, the Third Circuit has wholesale adopted such reasoning.  See O'Brien v. Gladstone, 2014 WL 2965948, at *3 (D.N.J. July 1, 2014) ("While § 1412 speaks only of proceedings under the Bankruptcy Code, the Third Circuit has held that § 1412 is the appropriate method for transfer of cases that are 'related to' a bankruptcy

But transferring pursuant to Section 1412 on a bare finding that only "related to" jurisdiction existed is contrary to a plain reading of the statute. Section 1412's text is narrower than bankruptcy jurisdiction as defined by Section 1334(b). While Section 1334(b) provides jurisdiction for all "civil proceedings arising under title 11, or arising in or related to cases under title 11," the language in Section 1412 is cabined to the transfer of "case[s] or proceeding[s] under title 11." (emphasis added). This Court presumes that Congress chose different language for a reason, and this Court must follow the statute as drafted. A bankruptcy judge in this District has come to a similar conclusion:

> I am not free to ignore the limiting language, or to treat section 1412 as though it includes extra language that Congress used in other sections of title 28 but that Congress did not include in section 1412 itself. Nor am I free to rewrite section 1412 based on arguments that it would make more sense if section 1412 had a broader application. The terms of section 1412 simply do not grant me the power to transfer a New York State litigation that is not a case or proceeding "under" the Bankruptcy Code.

Multibank, Inc. v. Access Glob. Capital LLC, 594 B.R. 618, 624 (Bankr. S.D.N.Y. 2018); see also Onewoo Corp. v. Hampshire Brands, Inc., 566 B.R. 136, 139–40 (Bankr. S.D.N.Y. 2017) (same).[4] Accordingly, this Court must determine whether this action "arises under" Title 11.

B. Whether this Action "Arises Under" Title 11

Actions arising under Title 11 are "any matter under which a claim is made under a provision of [T]itle 11." Delaware Tr. Co. v. Wilmington Tr., N.A., 534 B.R. 500, 511

---

proceeding." (citing Mar. Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1212 (3d Cir. 1991)). The Second Circuit has not yet addressed the issue.

[4]      Several district courts outside of the Second Circuit have adopted the reasoning outlined in Multibank and Onewoo. See Fitzgibbon v. Radack, 597 B.R. 836, 840 (E.D. Va. 2019); Williams v. Big Picture Loans, LLC, 2020 WL 1879675, at *3 (E.D. Va. Apr. 15, 2020); Southstar Capital Grp., I, LLC v. 1662 Multifamily LLC, 2019 WL 3752892, at *3 (M.D. Fla. Aug. 8, 2019).

(S.D.N.Y. 2015) (alteration in original) (quotation marks omitted).[5]  A common practice in this District when determining whether a case may be transferred pursuant to Section 1412 is to look to whether the action is "core" or "non-core."  See, e.g., ICICI Bank, 565 B.R. at 248; In re Northwest Airlines Corp., 384 B.R. 51, 60 n.1 (S.D.N.Y. 2008).  While no court in this District has engaged in as substantive an analysis as Multibank, determining whether an action is core does not run afoul of Section 1412's requirement that the action arise "under title 11."[6]

Although the term "core proceeding" is not statutorily defined, Section 157(b)(2) sets forth a non-exhaustive list of such proceedings.  A proceeding that involves "substantive rights created by federal bankruptcy law" or that "would have no existence outside of the bankruptcy" is a core proceeding.  28 U.S.C. § 157(b) (defining bankruptcy jurisdiction, in part, as "all core proceedings arising under title 11"); In re Robert Plan Corp., 777 F.3d at 596–97; see also MBNA America Bank, N.A. v. Hill, 436 F.3d 104, 108–09 (2d Cir. 2006) (core proceedings concern rights created by bankruptcy law, or that could arise only in a bankruptcy case).  Conversely, a claim is non-core if it "does not depend on bankruptcy laws for its existence and . . . could proceed in a court that lacks federal bankruptcy jurisdiction."  DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co., 464 B.R. 587, 591 (S.D.N.Y. 2012).  And, finally, in determining whether the nature of the proceeding is core, the Court is mindful that "core proceedings should be given a broad interpretation that is close to or congruent with

---

[5]     This is distinguishable from "arising in" jurisdiction which covers claims that are not based on any right expressly created by [T]itle 11, but nevertheless, would have no existence outside of the bankruptcy," Baker, 613 F.3d at 350, or "related to" jurisdiction which provides bankruptcy jurisdiction to any action if the "outcome might have any 'conceivable effect' on the bankrupt estate."  Parmalat Capital, 639 F.3d at 579.

[6]     Technically, the definition of core is slightly broader than just actions arising under Title 11.  See In re Robert Plan Corp., 777 F.3d 594, 596 (2d Cir. 2015) ("Core proceedings are those that are found to be 'arising under' the Bankruptcy Code or 'arising in' a bankruptcy case." (emphasis added)).  But to the extent this case falls within a delineated core proceeding under 28 U.S.C. § 157, it would arise under Title 11.

constitutional limits."  U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n., Inc, 197

F.3d 631, 636–37 (2d Cir. 1999); see also In re CBI Holding Co., Inc., 529 F.3d 432, 460 (2d

Cir. 2008) ("In crafting § 157, Congress realized that the bankruptcy court's jurisdictional reach

was essential to the efficient administration of bankruptcy proceedings and intended that the

'core' jurisdiction would be construed as broadly as possible." (quotation marks omitted)).

From the ramparts, MBIA argues that the transfer motion itself renders this case

core and transferable under Section 1412.  Specifically, MBIA asserts that the motion sub judice

concerns the administration of a bankruptcy estate."  This argument is absurd.  Applying

MBIA's reasoning, every motion filed under Section 1412 would transform the underlying case

to a core proceeding.  That would sweep away the language of Section 1412, which is cabined to

"proceeding[s] under title 11," and vitiate Congress's intent.

On their face, Tilton's claims do not fall within the non-exhaustive list of core

proceedings set forth in Section 157(b)(2).  She asserts a plethora of contract and tort causes of

action, none of which rely on the Bankruptcy Code to exist.  In opposition to this, MBIA argues

that this action is core due to the degree to which it is related to the Bankruptcy.  There are

instances where contract actions can be so intertwined with a bankruptcy that they are core.

The Second Circuit set forth a framework to determine whether a contract action

is a core proceeding:

> (1) whether the contract is antecedent to the reorganization petition;
> and (2) the degree to which the proceeding is independent of the
> reorganization.  The latter inquiry hinges on the nature of the
> proceeding.  Proceedings can be core by virtue of their nature if
> either (1) the type of proceeding is unique to or uniquely affected by
> the bankruptcy proceedings (claim allowance), or (2) the
> proceedings directly affect a core bankruptcy function (contractual
> subordination agreements affecting priority of claims).  Core
> bankruptcy functions of particular import to the instant proceedings
> include [f]ixing the order of priority of creditor claims against a

> debtor, plac[ing] the property of the bankrupt, wherever found, under the control of the court, for equal distribution among the creditors, and administer[ing] all property in the bankrupt's possession.

In re U.S. Lines, Inc., 197 F.3d 631, 637 (2d Cir. 1999) (alterations in original) (quotation marks and citations omitted).

The contracts at issue here predate the Bankruptcy.  Moreover, the disputes in question arose prior to the Bankruptcy.  Much of the alleged conduct occurred between 2003 and 2015.  But Tilton did not commence the Bankruptcy until 2018.  See In re Petrie Retail, Inc., 304 F.3d 223, 229 (2d Cir. 2002) ("The fact that the lease was executed pre-petition and that the dispute between [the parties] could arise outside of bankruptcy proceedings weighs against its core status."); Delaware Tr. Co., 534 B.R. at 516 (finding a case to be core because "although the contract in the present case preceded the bankruptcy, the dispute did not").  Accordingly, well-established Second Circuit precedent dictates that these facts alone weigh heavily against core status.

MBIA's sole argument is that this action is so intertwined with the Bankruptcy that it is core.  MBIA points to similarities in the Complaint and the Subordination Complaint.  Indeed, paragraphs in the Subordination Complaint are grafted verbatim from the Complaint in this action.  (Compare, e.g., Compl. ¶ 68, with Subordination Compl. ¶ 97.)  Moreover, the "steal the equity" themes that pervade the Complaint are infused in the Subordination Complaint.  Additionally, MBIA notes that numerous causes of action the Patriarch Parties assert that are also asserted in the Bankruptcy.  For example, the MBIA notes that the Tilton' fraudulent inducement allegations are also pleaded in the Bankruptcy.  (Compare Compl. Counts 1–3, with Subordination Compl. ¶¶ 222–25.)

The similarities are apparent.  But those similarities alone do not alter the fact that the claims do not spring from Title 11.  Moreover, this is an action between non-debtors, in which Tilton is asserting state-law claims.

MBIA's reliance on In re CBI Holdings Co. Inc., 529 F.3d 432 (2d Cir 2008), is misplaced.  While the Second Circuit found that the "claims of negligence, breach of contract, and fraud [that were] based upon the same operative facts as the above core proceedings" were core, that was because those claims "were filed in response to [a party's] Proof of Claim."  In re CBI Holding, 529 F.3d at 461 (quotation marks omitted).  The Court of Appeals characterized those claims as core under Section 157(b)(2)(C) because they "'response[d] to a proof of claim which is, in essence, a counterclaim, [and thus] is a core proceeding.'"  In re CBI Holdings, 529 F.3d at 462 (quoting Bank of Lafayette v. Baudoin, 981 F.2d 736, 741 (5th Cir. 1993)).  MBIA does not assert that this action is core under Section 157(b)(2)(C).  Nor could it as Section 157(b)(2)(C) encompasses "counterclaims by the estate against persons filing claims against the estate." (emphasis added).  Here, MBIA—not the estate—brings claims.  Indeed, MBIA fails to identify a single subsection within Section 157(b)(2) which would render this action core.  As such, the case at hand is distinguishable from In re CBI Holdings.

Second, MBIA avers that determinations in this matter will both affect the estate and the determinations of priorities among creditors.  This Court presumes that MBIA is arguing that this action would then "concern the administration of the estate" under Section 157(b)(2)(A).  Any damage award in this action would affect the priority of creditors and thus, affect the estate.

But that alone does not make this action core.  At bottom, the causes of action are common law contract and tort claims and do not emanate from Title 11.  Moreover, this Court has the power to stay these claims while the Bankruptcy proceeds to avoid the possibility of

conflicting rulings.  Further, to the extent that damages are awarded, the Bankruptcy Court could account for them when determining priorities among creditors.  See ResCap Liquidating Tr. v. PHH Mortg. Corp., 518 B.R. 259, 264 (S.D.N.Y. 2014) ("If [Plaintiff] recovers damages, the award can be distributed by the bankruptcy court according to the Plan's provisions.").

In that regard, this case is similar to In re Orion Pictures Corp., where the Second Circuit rejected the argument that deciding contractual matters which may affect the estate automatically renders a matter core under Section 157(b)(2)(A).  4 F.3d 1095, 1102 (2d Cir. 1993).  The Court of Appeals reasoned that this "approach [would] create[] an exception . . . that would swallow the rule[] [because] [a]ny contract action that the debtor would pursue against a defendant presumably would be expected to inure to the benefit of the debtor estate and thus concern[s] its administration."  In re Orion, 4 F.3d at 1102 (sixth alteration in original) (quotation marks omitted); see also In re Ames Dep't Stores, Inc., 2008 WL 7542200, at *7 (S.D.N.Y. June 4, 2008) ("Of course, a proceeding is not rendered core simply because it implicates property of a debtor's estate.") aff'd, 319 F. App'x 40 (2d Cir. 2009).  Indeed, Orion cautioned that "[a]ny contract action that the debtor would pursue against a defendant presumably would be expected to inure to the benefit of the debtor estate and thus 'concern[s]' its 'administration.'"  4 F.3d at 1102.  Applied here, this Court also concludes that the mere fact that this action could have a tangential effect on the estate is insufficient to render the action core.  Accordingly, this action does not arise under Title 11 and this Court lacks the power to transfer this action pursuant to Section 1412.

## CONCLUSION

For the foregoing reasons, Tilton's motion to remand this action to the New York State Supreme Court is granted.  MBIA's motion to transfer this case to the District of Delaware

is denied.  The Clerk of Court is directed to terminate the motions pending at ECF Nos. 20 and

21 and the Clerk of Court is directed to remand this action to the Supreme Court of the State of

New York, Westchester County.

Dated: September 18, 2020                          SO ORDERED:
      New York, New York

                                                  WILLIAM H. PAULEY III
                                                     U.S.D.J.